**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ABIRA MEDICAL
LABORATORIES, LLC, d/b/a
Genesis Diagnostics,

    Plaintiff,

v.

                                      Case No. 3:23-cv-1092-TJC-SJH

BLUE CROSS BLUE SHIELD OF
FLORIDA, INC.,

    Defendant.

## O R D E R

This case is before the Court on Defendant Blue Cross Blue Shield of Florida, Inc.'s Motion to Dismiss, Doc. 17. Plaintiff Abira Medical Laboratories, LLC, d/b/a Genesis Diagnostics sues Blue Cross for allegedly failing to pay or underpaying claims for medical services Abira provided to Blue Cross's insureds. Doc. 1. Blue Cross argues that Abira fails to state a claim on which relief can be granted. Doc. 17.

Much of the Complaint consists of allegations that Blue Cross failed to reimburse Abira for COVID-19 diagnostic testing. See Doc. 1 ¶¶ 16–27. Abira also alleges that between 2017 and 2021, Blue Cross failed to respond to some properly submitted claims and denied others on "entirely groundless" bases.

Id. ¶¶ 13–15. Abira brings eight counts:[1] (1) breach of contract, id. ¶¶ 29–35; (2) breach of the implied covenant of good faith and fair dealing, id. ¶¶ 36–40; (3) violation of the Family First Coronavirus Response Act (FFCRA) and Coronavirus Aid, Relief, and Economic Security Act (CARES Act), id. ¶¶ 41–46; (4) fraudulent and negligent misrepresentation and equitable and promissory estoppel, id. ¶¶ 47–57; (5) unjust enrichment, id. ¶¶ 58–63; (6) violations of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) and Florida Unfair Insurance Trade Practices Act (FUITPA), id. ¶¶ 64–70; (7) violation of the Florida Health Maintenance Organization Act (HMO Act), id. ¶¶ 71–75; and (8) a claim for recovery under the Employee Retirement Income Security Act (ERISA), id. ¶¶ 75–82.

Besides Blue Cross's motion, the Court has considered Abira's response, Doc. 24, and Blue Cross's reply, Doc. 30.

## Pleading and Dismissal Standards

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "To

---

[1] Abira lumps multiple claims into several of the counts. See Doc. 1 ¶¶ 41–57, 64–70. A complaint that fails to "separat[e] into a different count each cause of action or claim for relief" is an impermissible "shotgun pleading." Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1323 (11th Cir. 2015). Generally, shotgun pleadings are subject to dismissal, see Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1295 (11th Cir. 2018), but Blue Cross does not request dismissal on this basis, see generally Doc. 17.

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and quoted authority omitted). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Factual allegations are construed "in the light most favorable to the plaintiff," but "dismissal is proper when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Allen v. USAA Cas. Ins. Co., 790 F.3d 1274, 1278 (11th Cir. 2015) (internal quotation marks and quoted authority omitted).

### Count One: Breach of Contract

Abira alleges that Blue Cross was an out-of-network insurer. Doc. 1 ¶ 6. The difference between in-network and out-of-network insurers is the existence of a contract between the insurer and provider setting the rates the insurer will pay for the provider's services. See Palmyra Park Hosp. Inc. v. Phoebe Putney Mem'l Hosp., 604 F.3d 1291, 1295 (11th Cir. 2010). Despite this distinction, Abira alleges, "A verbal agreement existed between [Abira] and [Blue Cross] as evidenced by the relationship between the parties whereby [Abira] was to provide laboratory services to [Blue Cross's] subscribers/members. This agreement constitutes a valid and binding

3

contract[.]" Doc. 1 ¶ 30. Blue Cross denies the existence of any contract, oral or otherwise. Doc. 17 at 5. In response, Abira argues that the alleged contract is "implied in fact" based on Abira's provision of services to Blue Cross's insureds and Blue Cross's reimbursement "on certain occasions, often in an insufficient amount." Doc. 24 at 4–5.

In Florida, an oral contract "is subject to the basic requirements of contract law such as offer, acceptance, consideration and sufficient specification of essential terms." St. Joe Corp. v. McIver, 875 So. 2d 375, 381 (Fla. 2004). Abira alleges none of these elements and thus fails to allege facts sufficient to make plausible the existence of an oral contract.

A contract "implied in fact" is an unspoken agreement "based on a tacit promise" and "inferred in whole or in part from the parties' conduct[.]" Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., 695 So. 2d 383, 385 (Fla. 4th DCA 1997). "Common examples of contracts implied in fact are where a person performs services at another's request, or where services are rendered by one person for another without his expressed request, but with his knowledge, and under circumstances fairly raising the presumption that the parties understood and intended that compensation was to be paid." Id. at 386 (internal quotation marks omitted).

Abira alleges an oral—not implied in fact—contract in the Complaint. Doc. 1 ¶ 30. But even if the Court overlooks this, no implied in fact contract

4

can be inferred from the parties' alleged conduct. Blue Cross's reimbursement of some claims suggests contracts between Blue Cross and its insureds, not between Blue Cross and Abira.

Because Abira fails to plead facts sufficient to allege the existence of a contract, Abira fails to state a claim for breach of contract.

Count Two: Breach of the Implied Covenant of Good Faith and Fair Dealing

"A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation." Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1151 (11th Cir. 2005) (citing Cox v. CSX Intermodal, Inc., 732 So. 2d 1092, 1097 (Fla. 1st DCA 1999)). Because Abira fails to allege facts sufficient to establish the existence of a contract, the claim for breach of the implied covenant of good faith and fair dealing fails.

Count Three: FFCRA and CARES Act

After briefing on the Motion to Dismiss, the parties filed a joint notice that Abira withdraws the FFCRA and CARES Act claim and will omit that claim from any amended complaint. Doc. 47. They ask the Court to nevertheless decide the motion as to the remaining claims. Id. The Court construes the notice as a concession that Count Three should be dismissed.

5

Count Four: Misrepresentation and Estoppel

Abira concedes that its claim for fraudulent and negligent misrepresentation is inadequate but argues that the claim for estoppel is properly pleaded. Doc. 24 at 10–12.

Equitable estoppel involves three elements: "(1) a representation as to a material fact that is contrary to a later-asserted position, (2) reliance on that representation, and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon." State v. Harris, 881 So. 2d 1079, 1084 (Fla. 2004). Promissory estoppel likewise involves three elements: (1) a promise that the promisor should reasonably expect to induce action or forbearance; (2) action or forbearance in reliance on the promise; and (3) resulting injustice if the promise is not enforced. DK Arena, Inc. v. EB Acquisitions I, LLC, 112 So. 3d 85, 96 (Fla. 2013).

What Abira hopes to estop is unclear. Abira asserts only that Blue Cross is "precluded, both at law and in equity, from asserting rights which might have existed against [Abira] because [Abira] in good faith relied upon [Blue Cross's] representations and the parties' course of dealing, and [Abira] was induced to adversely change its position because [Abira] provided testing services . . . under the belief that it would be compensated by [Blue Cross] when it performed such services." Doc. 1 ¶ 50. Abira identifies no representation or promise by Blue Cross on which it relied. See generally id.

6

Abira argues that it relied on Blue Cross's "course of conduct (i.e., making payments (albeit often underpayments) for certain of services [Abira] rendered to [Blue Cross's] subscribers/members)." Doc. 24 at 11–12. The described "course of conduct" is not a promise or representation. Abira thus fails to state a claim for estoppel.

## Count Five: Unjust Enrichment

"To state a claim for unjust enrichment, a plaintiff must allege a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." Pincus v. Am. Traffic Sols., Inc., 333 So. 3d 1095, 1097 (Fla. 2022) (internal quotation marks and quoted authority omitted). Courts are split on whether services provided to a patient are a "benefit conferred" upon an insurer. Compare, e.g., Vanguard Plastic Surgery, PLLC v. UnitedHealthcare Ins. Co., 658 F. Supp. 3d 1250, 1267–68 (S.D. Fla. 2023) (recognizing the split but concluding that rendering care to an insured "does not confer the necessary direct benefit on an insurer" to support an unjust enrichment claim), with Surgery Ctr. of Viera, LLC v. Meritain Health, Inc., No. 6:19-cv-1694, 2020 WL 7389987, at *11–12 (M.D. Fla. June 1, 2020), report & recommendation adopted, 2020 WL 7389447 (M.D. Fla. June 16, 2020) (also recognizing the split and but concluding that the allegation that a

7

provider directly conferred a benefit on an insurance company by providing a service to an insured is "at least facially plausible"). This Court has gone both ways. Compare Surgery Ctr. of Viera, 2020 WL 7389987, at *12, with Adventist Health Sys./Sunbelt Inc. v. Med. Sav. Ins. Co., No. 6:03-cv-1121, 2004 WL 6225293, at *6 (M.D. Fla. Mar. 8, 2004). In Adventist Health, the Court reasoned:

> First, as a matter of commonsense, the benefits of healthcare treatment flow to patients, not insurance companies. . . . A third-party providing services to an insured confers nothing on the insurer except a ripe claim for reimbursement, which is hardly a benefit. Second, cases interpreting Florida law require the "benefit" in an unjust enrichment claim to be direct, not indirect or attenuated, as would be any putative "benefit" conferred on an insurer by treating its insureds.

2004 WL 6225293, at *6 (cleaned up). Although Surgery Center of Viera went the other way, even then the Court "question[ed] whether [the provider] will ever be able to establish the conferral of a direct benefit upon [the insurers]." 2020 WL 7389987, at *12.

In the Complaint, Abira alleges, "In performing testing services for [Blue Cross's] subscribers and/or members, . . . [Abira] conferred a benefit upon [Blue Cross's] subscribers and/or members and, therefore, upon [Blue Cross]." Doc. 1 ¶ 59. Abira adds, "[Blue Cross] has enriched [itself] at [Abira's] expense by failing and refusing to pay [Abira] funds for having provided testing services to [Blue Cross's] subscribers and/or members . . . and instead

8

using those funds for [Blue Cross's] own purposes." Id. ¶ 61. To argue against dismissal, Abira cites Surgery Center of Viera and asserts that it "provided literally thousands of laboratory testing services to [Blue Cross's] members." Doc. 24 at 13–14.

The Court is initially persuaded by Adventist Health's analysis. By treating an insured, a medical provider confers a benefit on the insured. The insurer's only role is to pay the claim, if the claim is covered under the insured's policy. The benefit to the insurer when an insured receives a service from a provider—if such a benefit exists—is indirect and cannot underlie a claim for unjust enrichment. However, if Abira chooses to file an amended complaint with more cogent and specific allegations, the Court will revisit this decision.

### Count Six: FDUTPA and FUITPA

As relevant here, FDUTPA prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" § 501.204(1), Fla. Stat. A FDUTPA claim involves three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." Baptist Hosp., Inc. v. Baker, 84 So. 3d 1200, 1204 (Fla. 1st DCA 2012) (quoting Kia Motors Am. Corp. v. Butler, 985 So. 2d 1133, 1140 (Fla. 3d DCA 2008)).

Among other prohibitions not at issue in this case, FUITPA prohibits specific "unfair claim settlement practices" and failure "to maintain a complete record of all the complaints received since the date of the last examination." § 626.9541(1)(i) & (j). Before suing under subsection (i)—unfair claim settlement practices—a plaintiff must give an insurer sixty days' written notice of the purported violation. § 624.155(3)(a). "No action shall lie" if the insurer pays the damages or corrects the circumstances giving rise to the purported violation within the sixty-day period. Id. § 624.155(3)(c). And a plaintiff cannot sue under subsection (j)—failure to maintain a complete record of complaints—because no private right of action for a violation of subsection (j) exists under Florida law. See § 624.155(1)(a) (establishing a private right of action against an insurer for specific subsections of the insurance code and omitting subsection (j)); see also Buell v. Direct Gen. Ins. Agency, Inc., 267 F. App'x 907, 909 (11th Cir. 2008) ("[T]he Florida legislature created a private cause of action for certain FUITPA violations but not others.").

To support the FDUTPA and FUITPA claims, Abira relies on "the aforesaid misrepresentations . . . concerning payment for providing testing services to [Blue Cross's] subscribers and/or members . . . for which [Blue Cross] ha[d] no intention to pay, and for which [Blue Cross], in fact, did not pay, or paid at amounts far below those required by [Blue Cross's] own policies

10

and protocols[.]" Doc. 1 ¶ 67. But Abira identifies no misrepresentation in the Complaint, see generally Doc. 1, and concedes that its allegations are inadequate to support its claim for fraudulent and negligent misrepresentation, Doc. 24 at 10.

Abira identifies no "deceptive act or unfair practice" other than misrepresentation. See Doc. 1 ¶ 64–70. The FDUTPA claim thus fails. As to FUITPA, the claim under subsection (j) fails because no private right of action exists for a violation of that subsection, and the claim under subsection (i) fails because Abira identifies none of the "unfair claim settlement practices" enumerated under subsection (i) and does not address whether it provided Blue Cross with the notice that is a condition precedent to filing suit for an alleged violation of subsection (i). See id. Without providing this information, Abira cannot show that it is entitled to relief.[2]

---

[2]Abira argues:

> In Blue Cross & Blue Shield of Michigan, as here, the plaintiff alleged that the defendant "engaged in the practices discussed in §§ 624.155 and 626.9541, and that as a result of those practices, Plaintiff was damaged." 961 F. Supp. at 275. The Court found "[t]his allegation is sufficient to satisfy the requirements of notice pleading." So, too, should it here.

Doc. 24 at 16 (citing Blue Cross & Blue Shield of Mich. V. Halifax Ins. Plan, Inc., 961 F. Supp. 271, 275 (M.D. Fla. 1997) (alteration in Doc. 24). But Abira is incorrect. In Blue Cross & Blue Shield of Michigan, the Court did not hold that the allegation that an insurer had "engaged in the practices discussed in §§ 624.155 and 626.9541" satisfied the sixty-day notice requirement in section 624.155(3)(a); instead, the Court held that those allegations satisfied the

11

Count Seven: HMO Act

The Florida HMO Act, codified at sections 641.17 to 641.3923, Florida Statutes, does not "provide a private right of action for damages based upon an alleged violation of its requirements." Villazon v. Prudential Health Care Plan, Inc., 843 So. 2d 842, 852 (Fla. 2003).

Relying on Middle District of Florida case Premier Inpatient Partners LLC v. Aetna Health & Life Ins. Co., Abira argues that this Court "has expressly held that there is a private right of action under the HMO Act." Doc. 24 at 16 (citing 371 F. Supp. 3d 1056, 1071 (M.D. Fla. 2019)). But Abira misinterprets Premier. There, the Court held that section 641.513(5), Florida Statutes, provides for a private right of action against an HMO. 371 F. Supp. 3d at 1071. Section 641.513(5) is in the same chapter of the Florida Statutes as the HMO Act, but it is not part of the Act and does not address violations of the Act. See § 641.17, Fla. Stat. (providing that Part I of Chapter 641—which includes sections 641.17 through 641.3923—"shall be known and may be cited as the 'Health Maintenance Organization Act.'"). It specifically establishes reimbursement for services provided "pursuant to this section"—that is, the

---

pleading standard in Federal Rule of Civil Procedure 8. See 971 F. Supp. at 275. In fact, in the very next paragraph, the Court dismissed the complaint based on the plaintiff's failure to alleged that it had complied with section 624.155(3)(a). Id.

services described in section 641.513(1)–(4). <u>Premier</u>'s holding is inapplicable here.

Because no private right of action exists for violations of the HMO Act, Count Seven must be dismissed.

<u>Count Eight: ERISA</u>

ERISA governs most employer-sponsored health plans and explicitly preempts any state laws relating to those plans. <u>See</u> 29 U.S.C. § 1003(a) (coverage); § 1144(a) (preemption). After exhausting administrative remedies, a participant in or beneficiary of an ERISA plan may sue to recover benefits due under the terms of the plan. <u>See</u> <u>id.</u> § 1132(a)(1)(B) (creating cause of action); <u>Counts v. Am. Gen. Life & Accident Ins. Co.</u>, 111 F.3d 105, 108 (11th Cir. 1997) ("The law is clear in this circuit that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court.").

Although attempting to sue under ERISA, Abira provides no specific information. <u>See</u> <u>generally</u> Doc. 1. Abira does not identify how many of its patients participated in ERISA plans (or even that any did), the terms and conditions of any ERISA plan, what benefits are allegedly due under an ERISA plan, or whether Abira exhausted administrative remedies. <u>See</u> <u>id.</u> Abira alleges only that its patients assigned their unspecified benefits to Abira "via a standard form assignment of benefits clause" and that Blue Cross "has

13

violated ERISA by failing to make payments of benefits to [Abira], as required under the terms and conditions of the Plan,[3] made claims determinations in an arbitrary fashion, and failed to provide a full and fair review to [Abira] for the claims assigned to [Abira]." Id. ¶¶ 78, 80. Without ERISA-specific information, Abira fails to state a claim on which relief can be granted.

### Blue Cross's General Arguments

Besides arguing that each specific count fails, Blue Cross argues that Abira fails to plead with particularity any claims sounding in fraud, that various statutes of limitations bar claims for many of the allegedly unpaid benefits (which were accrued between 2017 and 2021 and are identified in an attachment to the Complaint, Doc. 1-1), and that ERISA preempts various state-law claims. Doc. 17 at 2, 21–23. Without more details, the Court cannot rule on the statutes of limitations and preemption arguments. And because all counts are due to be dismissed anyway, the Court need not decide whether specific claims fail to meet the pleading standard for fraud.

### Conclusion

This is one of numerous cases Abira has filed against insurers throughout the country. Abira appears to raise the same or similar claims in each case. Other courts have dismissed most or all of the claims. See, e.g.,

---

[3]Though appearing to refer to a specific ERISA plan, Abira provides no explanation or details of the purported "Plan." See generally Doc. 1 ¶¶ 75–82.

14

Abira Med. Lab'ies, LLC v. Centene Corp. et al., No. 23-5057, 2024 WL 3792224 (E.D. Pa. Aug. 13, 2024) (applying Pennsylvania and federal law) (dismissing claims for breach of contract, breach of implied covenant of good faith and fair dealing, fraudulent misrepresentation, negligent misrepresentation, promissory estoppel, equitable estoppel, and violations of the FFCRA and CARES Act for failure to state a claim and for lack of personal jurisdiction); Abira Med. Lab'ies, LLC v. Allied Benefit Sys., LLC, No. 23-04002, 2024 WL 2746103 (D.N.J. May 29, 2024) (applying New Jersey and federal law) (dismissing Abira's claims for breach of contract, breach of implied covenant of good faith and fair dealing, fraudulent misrepresentation, negligent misrepresentation, promissory estoppel, equitable estoppel, quantum meruit and unjust enrichment, and violation of the FFCRA or CARES Act for failure to state a claim; noting that Abira had filed more than forty cases in New Jersey alone). Here, Abira fails to state a claim on any count under Florida or federal law.[4]

Accordingly, it is hereby

**ORDERED:**

---

[4]As to misrepresentation, Abira states that it "withdraws any purported claim for fraudulent or negligent misrepresentation . . . without prejudice to later amend its pleadings should facts be disclosed at a later date during discovery." Doc. 24 at 10. But any misrepresentation on which Abira might have relied would have been made directly to Abira, so no discovery could uncover a misrepresentation of which Abira was unaware.

15

1. Defendant's Motion to Dismiss, Doc. 17, is **GRANTED** to the extent the Complaint, Doc. 1, is **DISMISSED** as follows:

   a. Counts One, Two, Four, Five, and Eight are **DISMISSED without prejudice**.

   b. Counts Three and Seven are **DISMISSED with prejudice**.

   c. As to Count Six, the claims for violations of FDUTPA and section 626.9541(1)(i) of FUITPA are **DISMISSED without prejudice**. The claim for a violation of section 626.9541(1)(j) of FUITPA is **DISMISSED with prejudice**.

2. No later than **September 27, 2024,** Abira may file an amended complaint if it can allege facts and a viable legal theory adequate to support a claim. If Abira files an amended complaint and relies on diversity jurisdiction, Abira must identify the citizenship of each of its members.[5] Moreover, Abira must separate each cause of action or claim for relief into a separate count. If Abira files no amended complaint by the deadline, the Court will dismiss the case with prejudice and close the file. If Abira files an amended complaint, Blue Cross must file its response by **October 28, 2024**.

---

[5] At present, Abira has failed to adequately support diversity jurisdiction. See Doc. 1 ¶¶ 6, 8. Because Abira also sues under federal law, the Court nevertheless has subject matter jurisdiction.

**3.** Until the Court can determine whether Abira can state a viable claim, the Amended Case Management and Scheduling Order, Doc. 44, is **vacated**. Further discovery and pretrial compliance is stayed pending further order. **The September 6, 2024, hearing is canceled.**

**DONE AND ORDERED** in Jacksonville, Florida, the 28th day of August, 2024.



TIMOTHY J. CORRIGAN
United States District Judge

vng

Copies to:

Counsel of record