UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ABIRA MEDICAL
LABORATORIES, LLC, etc.,

    Plaintiff,

v.      Case No. 3:23-cv-1092-TJC-SJH

BLUE CROSS BLUE SHIELD
OF FLORIDA, INC., etc.,

    Defendant.

## **O R D E R**

    Plaintiff Abira Medical Laboratories, LLC, d/b/a Genesis Diagnostics, alleges in its amended complaint that it performed laboratory diagnostic testing for patients insured by defendant Blue Cross Blue Shield of Florida, Inc. d/b/a Florida Blue and that Blue Cross failed to reimburse it, either in whole or in part, resulting in at least $13,967,578 in damages. In this and the previous iteration of its complaint (and in suits filed around the country against other insurers), Abira has tried to pin these general allegations to a viable cause of action.

    Blue Cross has moved to dismiss (Doc. 66), Abira responded (Doc. 76), Blue Cross replied (Doc. 78), and the Court held argument on the motion on July 24, 2025 (Doc. 79), the record of which is incorporated by reference, as is

the Court's earlier comprehensive order (Doc. 51) which dismissed Abira's original complaint, but granted it leave to amend "if it can allege facts and a viable legal theory adequate to support a claim." Doc. 51 at 16.

To survive a Rule 12(b)(6) motion to dismiss, Abira's amended complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation and citation omitted). Even on its second chance, Abira has failed to meet this standard. For the reasons explained below, Abira's amended complaint is due to be dismissed in its entirety, this time with prejudice.[1]

Count One—ERISA

The Court's order dismissing Abira's original ERISA claim explained that Abira "provides no specific information[,] . . . does not identify how many of its patients participated in ERISA plans (or even that any did), the terms and conditions of any ERISA plan, what benefits are allegedly due under an ERISA plan, or whether Abira exhausted administrative remedies." Doc. 51 at 13. The Court stated that "Abira alleges only that its patients assigned their unspecified benefits to Abira . . . and that Blue Cross has violated ERISA by

---

[1] Although Abira's amended complaint includes no specific jurisdictional allegations, its original complaint invoked the Court's jurisdiction based on federal question and/or diversity. See Doc. 1 at ¶¶ 8 & 9. The same would hold true for the amended complaint, which raises an ERISA claim and a number of state law claims (the parties' citizenship is alleged to be diverse and the amount in controversy exceeds $75,000).

2

failing to make payments of benefits to Abira." Id. at 13-14. The Court dismissed Abira's ERISA claim for failure to allege any ERISA-specific information, but did so without prejudice, giving Abira an opportunity to replead to correct these deficiencies.

But Abira's amended complaint suffers the same defects—there is hardly any new information at all.[2] Although Abira provided a 158-page exhibit listing the claims Blue Cross allegedly failed to pay in whole or in part between 2016 and 2021, it includes no information as to which patients might be covered by ERISA plans.[3] See Doc. 67 (corrected exhibit). The amended complaint includes a footnote explaining that Abira "anticipates amending" the exhibit to include the plan name and "whether the plan is subject to ERISA," Doc. 53 at 4, n.2, but it never did so. At oral argument, Abira stated the footnote was included in error, that in fact it does not any have information about which

---

[2] The Court notes that the assignment language (referenced in the original complaint but quoted in the amended complaint) which plaintiff alleges is the same or similar to the assignments executed by the insureds, confers rights on "Genesis Diagnostics or its assigned affiliates." See Doc. 53 at ¶ 10. Abira alleges it is doing business as Genesis Diagnostics and the Court is therefore satisfied that Abira has Article III standing to raise its ERISA claim (assuming that Abira obtained a valid assignment from each insured). Cf., Peacock Med. Lab, LLC v. UnitedHealth Group, Inc., No. 14-81271-CV, 2015 WL 2198470, at *3-4 (S.D. Fla. May 11, 2015) (dismissing laboratories' ERISA claims for lack of standing because insureds' assignment of benefits named only the treatment center, not the laboratories).

[3] Abira's original complaint included a similar 202-page list. See Doc. 1 at Ex. A.

plans are subject to ERISA, but it presumes that some are because a "majority" of American health benefits plans are governed by ERISA. Abira stated that Blue Cross could itself comb through the claims and find out which ones were subject to ERISA. But it is not a defendant's responsibility to determine whether a plaintiff can bring an ERISA claim. Abira has failed to cure any of the defects noted in the Court's first order dismissing this claim.

Abira contends it is not in a position to be able to access plan documents and that it should not be required to cite to any particular plan provision. But the cases Abira cites for these propositions are distinguishable. For example, Braden v. Wal-Mart Stores, Inc., 588 F.3d 585 (8th Cir. 2009) and Pension Benefit Guaranty Corp. v. Morgan Stanley Investment Management, Inc., 712 F.3d 705 (2d Cir. 2013) concern ERISA plan investment decisions and, while both include general statements about the difficulty ERISA plaintiffs may have in gaining inside information, neither can be read to endorse the spare and generic allegations here. See, e.g., Braden 588 F.3d at 598 (explaining that while the court must take into account a plaintiff's limited access to inside information, plaintiff "must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition or strike suit"). In Griffin v. Suntrust Bank, Inc., 648 F. App'x 962 (11th Cir. 2016), the Eleventh Circuit held the provider could not access the plan documents because the insured's assignment to the provider did not include that right. By contrast, the

4

assignment language Abira alleges each insured signed was quite broad and may well have provided Abira with access to the plan documents. At this juncture, however, this is beside the point—Abira has failed to identify which claims are even governed by ERISA, despite the Court's earlier dismissal order advising it that this was one of the defects it must cure to proceed with its ERISA claim. Abira's ERISA claim is due to be dismissed.

<u>Count Two—Breach of Third-Party Beneficiary Contract</u>[4]

For its breach of third-party beneficiary contract, Abira alleges that, by assignment, it is the beneficiary of the insureds' contract rights to payment from Blue Cross. <u>See</u> Doc. 53 at ¶ 33. But standing in the shoes of its insureds by assignment would make Abira a first-party, not a third-party beneficiary. However, Abira then alleges that even if no assignments were executed, Abira is the intended beneficiary of the contract between the insureds and Blue Cross, which forms the basis of a third-party beneficiary contract. <u>Id.</u> at ¶ 34. At argument, Abira said it intended this count to include alternative language to capture its status as either a first-party by assignment or third-party beneficiary of the insureds' contracts.

---

[4] Counts Two through Five are state law claims and would only apply to insureds covered by non-ERISA plans, as Abira essentially conceded at oral argument. <u>See also</u> Order, Doc. 51 at 13 (explaining that ERISA explicitly preempts state law claims related to those plans).

5

Either way, however, Abira would have to plead that the insureds had contracts with Blue Cross that covered the services that Abira, an out-of-network provider, provided to Blue Cross's insureds. This it has not done. Abira alleges it performed lab work for Blue Cross's insureds as an out-of-network provider, it alleges it billed Blue Cross for services, it alleges Blue Cross did not pay or underpaid. But there is simply no allegation anywhere in its amended complaint stating that the services it provided are covered by the insureds' Blue Cross health insurance plans such that Blue Cross had any obligation to pay the claims, or that Abira had any basis to believe Blue Cross would pay the claims. It therefore fails to allege a material breach of any contract. See, e.g., Beck v. Lazard Freres & Co., LLC, 175 F.3d 913, 914 (11th Cir. 1999) ("The elements of a breach of contract action [under Florida law] are (1) a valid contract; (2) a material breach; and (3) damages") (citation omitted); St. Joe Corp. v. McIver, 875 So. 2d 375, 381 (Fla. 2004) ("The basic requirements of [a] contract [include] offer, acceptance, consideration and sufficient specification of essential terms.") (emphasis supplied).

The cases Abira cites for the proposition that it has alleged enough are distinguishable. For example, in Peacock Medical Lab, 2015 WL 2198470, the plaintiff labs alleged that for each of the 132 patients whose lab tests were at issue, plaintiffs verified the existence of coverage with the insurer before providing services and received assurance that its services were covered and

6

would be promptly paid. Peacock, 2015 WL 2198470, at *2. Abira's complaint includes no similar allegations—indeed, at oral argument Abira stated that Blue Cross could look up each claim to see if there was any contractual obligation to pay.

Abira also relies on Abira Medical Laboratories, LLC v. CareSource, No. 3:24-cv-157, 2024 WL 4817444 (S.D. Ohio Nov. 18, 2024). But there, plaintiff alleged that for each of the 192 laboratory tests it performed, it sent the insurer the requisitions for the lab tests along with the executed assignments of benefits, which the court found sufficient to create a contractual arrangement under Ohio law. Id. at *2. Abira also alleged it had received assurance from an (albeit unidentified) CareSource representative that CareSource would pay for the lab services to its insureds. Id. at *3. Here, Abira has not alleged that it submitted anything to Blue Cross for the 9,002 lab tests other than the claim seeking payment in full for its services. Moreover, Abira's amended complaint seemingly contemplates that some of the insureds may not have executed requisitions with assignment of benefit language (see Doc. 53 at ¶ 11), and, as noted above, at argument Abira suggested that Blue Cross could go through the thousands of claims Abira submitted to see if Blue Cross had a contractual obligation to pay.

Finally, the Court is not persuaded that Abira Medical Laboratories, LLC v. Kaiser Foundation Health Plan of Mid-Atlantic States, Inc., No. 24-cv-759,

7

2024 WL 2188911 (E.D. Pa. May 15, 2024) counsels a different result. There, the court rejected a defense argument—not raised here—regarding the sufficiency of assignments and determined Abira stated a claim for breach of contract under Pennsylvania law when it alleged it had assignments for payment from the insureds for each of nearly 500 lab tests it performed. Id. at *2.

A breach of contract claim need not be pled with particularity, but "a plaintiff must allege enough factual material to identify an enforceable promise that the defendant's actions allegedly breached." Caterpillar Fin. Servs. Corp. v. Venequip Mach. Sales Corp., 147 F.4th 1341, 1348 (11th Cir. 2025). Count Two fails this basic test and is due to be dismissed.

### Count Three—Breach of Third-Party Bad Faith Claims

The allegations of Abira's breach of third-party bad faith claim are confusing, referencing a statutory bad faith claim, a breach of the implied covenant of good faith and fair dealing, and a common law bad faith claim. None of these are sustainable. Abira concedes in a footnote of the amended complaint that it has not complied with the statutory pre-notice requirements to bring a statutory bad faith claim (see Doc. 53 at 9, n.3) (and it has not alleged the other elements); the Court previously rejected Abira's contention that it could bring a separate claim under Florida law for breach of the implied covenant of good faith and fair dealing (see Doc. 51 at 5); and Florida law does

8

not recognize a first-party common law bad faith claim (see QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc., 94 So. 3d 541, 549 (Fla. 2012)). Count Three is due to be dismissed.

Count Four—Quantum Meruit/Unjust Enrichment

"Under Florida law, claims for unjust enrichment and quantum meruit provide relief based upon the theory that the party seeking relief conferred a benefit on the defendant." Beth Wolf, APRN-BC LLC v. Cigna Health & Life Ins. Co., 733 F. Supp. 3d 1278, 1280 (S.D. Fla. 2024). In the Court's earlier dismissal order, it explained that while there is a split of authority as to whether services provided to a patient are a "benefit conferred" upon an insurer, the Court sided with the cases holding they are not, but stated it was willing to revisit that decision if Abira wished to amend to include "more cogent and specific allegations." Doc. 51 at 7-9. Abira's amended count includes the additional allegation that Blue Cross experienced a benefit in that it did not have to compensate a different lab because Abira provided services to Blue Cross's insureds. Abira does not explain how this additional allegation makes any difference and the Court fails to see how it does. The Court stands with the line of cases holding that under Florida law, health care services provided to a patient do not confer benefits on the insurer. See, e.g., N. Broward Hosp. Dist. v. Glob. Excel Mgmt., Inc., No. 24-61242-CIV, 2025 WL 395753, at *3 (S.D. Fla. Feb. 3, 2025); Beth Wolf, 733 F. Supp. 3d at 1280; GVB MD, LLC v. United

9

Healthcare Ins. Co., No. 19-20727-Civ, 2019 WL 5260274, at *4-5 (S.D. Fla. Aug. 14, 2019); Adventist Health Sys./Sunbelt Inc. v. Med. Sav. Ins. Co., No. 6:03-cv-1121, 2004 WL 6225293, at *6 (M.D. Fla. Mar. 8, 2004). Thus, a claim for unjust enrichment or quantum meruit is not sustainable based on the allegations of Abira's amended complaint. Count Four is therefore due to be dismissed.

### Count Five—Negligence

In its newly-added negligence claim, Abira alleges Blue Cross has breached a duty of care in its handling of the claims. But this is just another way of pleading a common law bad-faith claim, which is not permitted under Florida law. See QBE Ins. Corp., 94 So. 3d at 549; see also United Fire & Cas. Co. v. Progressive Express Ins. Co., No. 6:19-cv-1049-Orl-41EJK, 2019 WL 13067269, at *3 (M.D. Fla. Nov. 20, 2019) ("Plaintiff appears to be bringing a bad faith claim cloaked in negligence, which is impermissible."). Abira does not articulate a basis to hold to the contrary (and the two cases it cites regarding an insurer's duty are in fact bad faith cases[5]). Blue Cross also argues that Florida's economic loss rule precludes this claim. Abira responds that its negligence claim is pled in the alternative in the event no contract exists. But Abira's allegations of negligence stem from a contractual relationship between

---

[5] Perera v. U.S. Fidelity & Guar. Co., 35 So. 3d 893 (Fla. 2010); Gutierrez v. Yochim, 23 So. 3d 1221 (Fla. 2d DCA 2010).

10

the parties. See Martinez v. QBE Spec. Ins., Co., No. 8:18-cv-263-T-36AAS, 2018 WL 4354831, at *3 (M.D. Fla. Sept. 12, 2018) (dismissing negligence claim based on economic loss rule, explaining that "the alleged duty in a plaintiff's tort claim cannot stem from a contractual relationship between the parties") (citation omitted); see Doc. 53 at ¶57 (allegation of negligence claim referencing Blue Cross's duty to Abira "as assignee and beneficiary of the contract"). Count Five is due to be dismissed.

Shot-gun pleading

In the opening paragraph of Count Two (and with each successive count), Abira realleges and incorporates "each of the factual recitations set forth in the paragraphs above," which, in effect, results in the incorporation of multiple allegations having nothing to do with the count at hand. In the Court's first order of dismissal, Abira was warned, albeit for a different reason, that "shotgun pleadings are subject to dismissal."[6] Doc. 51 at 2, n.1. Unlike in the first round, this time Blue Cross moves to dismiss on this basis. See Doc. 66 at 21-22. In its response, Abira claims its amended complaint cures the defect noted in the original complaint and thus it is not a shotgun pleading. But if Abira had read the Weiland case the Court cited in its order, it would have

---

[6] In its initial complaint, several of the counts included multiple claims, which is another variety of an impermissible shotgun pleading. See Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1323 (11th Cir. 2015).

11

known that indeed it is.  After having been warned, Abira's failure to comply with the Eleventh Circuit's pleading requirements is an independent basis for the dismissal of Counts Two through Five.

Conclusion

The Court's earlier dismissal order was very specific, alerting Abira to the concerns the Court had with the vagueness of its allegations.  In its response to the motion to dismiss and at argument, Abira offered to again amend its complaint.  But it never acknowledged that it has already had that opportunity, not did it suggest what it might include to cure any of the defects.  Indeed, at oral argument, Abira was unable to answer basic questions about its case—how many claims there were, how its damages figures had been calculated,[7] how many claims, if any, were governed by ERISA, whether Blue Cross had a contractual obligation to pay each of the claims.  Thus, despite having two opportunities, Abira's effort to present a viable complaint still falls

---

[7] The Court, having itself now taken a closer look at the exhibit Abira attached to its amended complaint (Doc. 67, corrected exhibit), sees that it lists 9002 individual claims, ranging in value from $4 to $21,540, the sum total of which is $13,967,578—the same very specific figure pled in Abira's amended complaint as the amount of damages it seeks.  But at argument Abira acknowledged (as it pled in its amended complaint) that some of the claims were paid in part, and suggested that an additional column could be added to the spreadsheet to show what amounts were already paid, in essence acknowledging that it damages claim is inflated, perhaps by a lot.  At argument, Abira's counsel said that in signing the complaint under Rule 11, he took his client's word for the amount of damages due and did not himself try to verify it.

far short, with further amendment futile. Abira's claims are now due to be dismissed with prejudice. See, e.g., M.G. v. St. Lucie Cnty. Sch. Bd., 741 F.3d 1260, 1263 (11th Cir. 2014) (affirming dismissal with prejudice where plaintiff's amended complaint failed to correct defects identified by the district court when it dismissed plaintiff's initial complaint and granted leave to amend); Abira Medical Labs., LLC v. Cigna Health & Life Ins. Co., No. 24-2837-cv, 2025 WL 1443016, at *3 (2d Cir. May 20, 2025) (affirming dismissal with prejudice of Abira's claims under ERISA and, inter alia, for breach of contract, unjust enrichment, and breach of implied covenant of good faith and fair dealing where Abira did not separately move for leave to amend and where its reference to a request to amend within its response to the motion to dismiss did not include any details as to how it would cure the defects) (summary order).

Accordingly, it is hereby

**ORDERED**:

Defendant Blue Cross Blue Shield of Florida, Inc.'s Motion to Dismiss (Doc. 66) is **GRANTED**. Plaintiff's amended complaint is **DISMISSED WITH PREJUDICE**. The Clerk shall **CLOSE** the file.

**DONE AND ORDERED** in Jacksonville, Florida this 15th day of September, 2025.



TIMOTHY J. CORRIGAN
Senior United States District Judge

s.
copies:
Counsel of record